**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED JULY 28, 2009

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                               No. 132876

MATTHEW LLOYD McGRAW,

      Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

KELLY, C.J.

This case involves further analysis of the issue presented in *People v Sargent*.[1] There we held that offense variable (OV) 9 in the sentencing guidelines[2] cannot be scored using uncharged acts that did not occur during the same criminal transaction as the sentencing offense. Today we decide whether the offense variables should be scored solely on the basis of conduct occurring during the sentencing offense[3] or also using conduct occurring afterward.

---

[1] *People v Sargent*, 481 Mich 346; 750 NW2d 161 (2008).

[2] MCL 777.1 *et seq.*

[3] The sentencing offense is the crime of which the defendant has been convicted and for which he or she is being sentenced.

We hold that a defendant's conduct after an offense is completed does not relate back to the sentencing offense for purposes of scoring offense variables unless a variable specifically instructs otherwise. Therefore, in this case, defendant's flight from the police after breaking and entering a building was not a permissible basis for scoring OV 9. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the circuit court for resentencing.

FACTS AND PROCEDURE

Defendant broke into a general store in Marion Township on June 28, 2002, broke into an audio store on July 20, 2002, and then broke into the same general store again on January 5, 2003. No one was in the stores during the break-ins. During the January 5 incident, a witness called the police after seeing defendant and two accomplices loading stolen goods into a car. After defendant and his accomplices left the scene of the crime, a police officer saw the getaway car traveling on the road and pursued it. The chase ended when the vehicle entered a yard and crashed into a chain-link fence. The occupants fled on foot, but defendant was captured.

Defendant pleaded guilty to three counts of breaking and entering a building with intent to commit larceny[4] in exchange for the dismissal of other charges, including fleeing and eluding the police.[5] In scoring the offense

---

[4] MCL 750.110.

[5] MCL 750.479a(3).

2

variables, the sentencing court assessed 10 points under OV 9 because it found that defendant had placed at least two victims in danger. The court stated that it would sentence defendant within the guidelines recommendation and imposed concurrent prison terms of 9 to 30 years, 6 to 30 years, and 6 to 30 years. The nine-year sentence resulted from the assessment of 10 points under OV 9 for fleeing from the police after the January 5 break-in.[6]

Defendant's timely request for the appointment of appellate counsel was denied, as was his timely pro se motion for resentencing challenging the scoring of OV 9. The Court of Appeals denied defendant's pro se application for leave to appeal for lack of merit, but this Court remanded the case to the Court of Appeals for consideration as on leave granted.[7]

The Court of Appeals affirmed defendant's conviction, concluding that the record supported the assessment of 10 points under OV 9 because there were two to nine victims.[8] We granted defendant's application for leave to appeal.[9]

---

[6] Had no points been assessed under OV 9, the guidelines minimum sentence range would have been 19 to 76 months, and defendant's 9-year sentence would have exceeded the recommended sentencing range.

[7] *People v McGraw*, 473 Mich 877 (2005).

[8] *People v McGraw*, unpublished opinion per curiam, issued November 16, 2006 (Docket No. 264052); 2006 WL 3334585.

[9] *People v McGraw*, 483 Mich 876 (2009).

THE PROPER APPROACH TO SCORING OFFENSE VARIABLES

The interpretation and application of the legislative sentencing guidelines, MCL 777.1 *et seq.* involve legal questions that this Court reviews de novo.[10]

We are called on to provide further detail delineating the scope of conduct that sentencing courts should consider when scoring the offense variables of the statutory sentencing guidelines. Defendant argues that the variables are to be scored using an offense-specific approach. Under this approach, only conduct occurring during the offense of which the defendant was convicted may be considered. The prosecution, on the other hand, argues that the guidelines must be scored using a transactional approach. Under this approach, a continuum of the defendant's conduct is examined, which can extend far beyond the acts that satisfy the elements of the sentencing offense.

In analyzing this scoring issue, we read the statutory provision for OV 9 in the context of the entire statute "so as to produce, if possible, a harmonious and consistent enactment as a whole."[11] The fair and natural import of the provision governs, considering the subject matter of the entire statute.[12]

---

[10] *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).

[11] *Grand Rapids v Crocker*, 219 Mich 178, 182-183; 189 NW 221 (1922).

[12] *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999).

We addressed what conduct the sentencing court should consider in *People v Sargent*.[13] We explained that "the offense variables are generally offense-specific. The sentencing offense determines which offense variables are to be scored in the first place, and then the appropriate offense variables are generally to be scored on the basis of the sentencing offense."[14] We stated that usually "only conduct 'relating to the offense' may be taken into consideration when scoring the offense variables."[15]

Our determination about how offense variables should be scored was based on a reading of the sentencing guidelines statutes as a whole. We relied on the Legislature's use of the terms "the offense" and "each offense" in MCL 777.21:

> MCL 777.21 instructs us on how to score the sentencing guidelines. MCL 777.21(1)(a) instructs us to "[f]ind the offense category for *the offense* . . . [and] determine the offense variables to be scored for that offense category . . . ." (Emphasis added.) MCL 777.21(2) instructs us to "score *each offense*" if "the defendant was convicted of multiple offenses . . . ." (Emphasis added.) MCL 777.21(3), which pertains to habitual offenders, instructs us to "determine the . . . offense variable level . . . based on *the underlying offense*," and then to increase the upper limit of the recommended minimum sentence range as indicated. (Emphasis added.) This language indicates that the offense variables are generally offense specific.[16]

---

[13] *People v Sargent*, 481 Mich 346; 750 NW2d 161 (2008).

[14] *Id.* at 348.

[15] *Id.* at 349.

[16] *Id.* at 348.

We found it telling in *Sargent* that the individual offense variables presume that the sentencing offense is the reference point for scoring purposes. This is because only when conduct occurring after commission of the sentencing offense is to be considered in scoring do the variables spell out the scope of that conduct:

> That the general rule is that the relevant factors are those relating to the offense being scored is further supported by the fact that the statutes for some offense variables specifically provide otherwise. For instance, MCL 777.44(2)(a) provides that when scoring OV 14 (whether the offender was a leader in a multiple-offender situation), "the entire criminal transaction should be considered . . . ." For other offense variables, the Legislature unambiguously made it known when behavior outside the offense being scored is to be taken into account. OV 12 (contemporaneous felonious acts), for example, applies to acts that occurred within 24 hours of the sentencing offense and have not resulted in separate convictions. MCL 777.42(2)(a). OV 13 (continuing pattern of criminal behavior) explicitly permits scoring for "all crimes within a 5-year period, including the sentencing offense," regardless of whether they resulted in convictions. MCL 777.43(2)(a). OV 16 (property obtained, damaged, lost, or destroyed) provides that in "multiple offender or victim cases, the appropriate points may be determined by adding together the aggregate value of the property involved, including property involved in uncharged offenses or charges dismissed under a plea agreement." MCL 777.46(2)(a). Finally, OV 8 (asportation or captivity of victim) specifically focuses on conduct "beyond the time necessary to commit the offense." MCL 777.38(1)(a). That the Legislature has explicitly stated that conduct not related to the offense being scored can be considered when scoring some offense variables strengthens our conclusion that, unless stated otherwise, only conduct that relates to the offense being scored may be considered.[17]

---

[17] *Id.* at 349-350. Although *Sargent* held that the Legislature intended an offense-specific view to scoring the offense variables, we did not definitively answer the question whether transactional conduct may be considered. It was not necessary to reach that question to resolve the case because it was clear that the defendant's conduct did not occur during the same criminal transaction. The conduct in question was remote from the sentencing offense. *Id.* at 350-351.

As we explained in *Sargent*, it is telling that the Legislature included language in particular variables explicitly instructing the sentencing court to consider factors or conduct beyond the sentencing offense itself; however, it included no such language in other variables, such as OV 9. If the Legislature had intended a court scoring the sentencing guidelines to use a transactional approach, much of the language in some of the offense variables would have been surplusage. In interpreting a statute, we avoid a construction that would render part of the statute surplusage or nugatory.[18]

If we read the sentencing guidelines as offense-specific by default, the language defining the scope of conduct for particular offense variables is not surplusage. For example, points are assessed under OV 14 if the offender was a leader in a multiple-offender situation. The statute provides that the "entire criminal transaction should be considered" when scoring this offense variable.[19] When we acknowledge that the default procedure is to score the offense variables using an offense-specific approach, the instruction for OV 14 takes on significance. It requires OV 14 to be scored differently from most. Points must be assessed for conduct extending beyond the sentencing offense. The Legislature's wording of the offense variable statutes implies a default rule that the variables are to be scored considering the sentencing offense alone. It is only when conduct

---

[18] *Baker v Gen Motors Corp*, 409 Mich 639, 665; 297 NW2d 387 (1980).

[19] MCL 777.44(2)(a).

7

beyond the sentencing offense is to be considered that the variables address the scope of that conduct.

Furthermore, the sentencing guidelines set forth a comprehensive, detailed scheme for scoring. Every offense to which the guidelines apply is listed in a rather voluminous part 2, comprising MCL 777.11 through 777.19.[20] When providing rules for guidelines scoring, the Legislature took pains to set forth step-by-step instructions, pointing with particularity to where one must look to make the necessary calculations. Given the Legislature's attention to detail, we do not believe that it intended to deviate from what otherwise appears to be an offense-specific orientation. If assessing points for conduct beyond the sentencing offense were to be the norm, the Legislature would have delineated the scope of that conduct, as it did with several specific offense variables.[21]

---

[20] See MCL 777.21(1).

[21] The dissent claims that we fail to explain on what authority we limit the scoring for offense variables to the sentencing offense. It was the Legislature, not we, that drafted and enacted the detailed and complex sentencing scheme. It was the Legislature that chose to limit the scoring for offense variables to the sentencing offense. The dissent loses sight of the most important piece of the puzzle: the statute. Instead, it turns to res gestae and Court of Appeals decisions to support its position, one of which did not even involve the statutory sentencing guidelines, but instead involved the old judicial sentencing guidelines. See *People v Chesebro*, 206 Mich App 468; 522 NW2d 677 (1994). Furthermore, the dissent rests its res gestae argument on *People v Gillis*, 474 Mich 105; 712 NW2d 419 (2006), which interpreted the felony-murder statute, quite a different statute from the sentencing guidelines statute. When the smoke from the dissent clears, one can see that its arguments are far from the mark.

8

The prosecution argues that our decision in *People v Morson*[22] reflected our belief that the Legislature intended sentencing courts to consider a defendant's entire criminal transaction when scoring the variables. We disagree. We never held in *Morson* that conduct beyond the sentencing offense can be a basis for scoring OV 9. There, 10 points were assessed under OV 9 because the defendant endangered two victims; the sentencing offense was armed robbery.[23] The defendant's accomplice robbed a woman of her purse at gunpoint.[24] The sentencing court concluded that there were two "victims" for purposes of OV 9: the woman who was robbed and another man standing nearby who was shot by the perpetrator.[25]

We concluded that the sentencing court did not err by finding that the person near the woman when the perpetrator stole her purse was "placed in danger of injury or loss of life" by the armed robbery.[26] Therefore, he was a victim under OV 9.[27]

---

[22] *People v Morson*, 471 Mich 248; 685 NW2d 203 (2004).

[23] *Id.* at 254.

[24] *Id.* at 253.

[25] *Id.* at 253, 261.

[26] See MCL 777.39(2)(a), as added by 1998 PA 317, which is also the version of the statute applicable in this case.

[27] *Id.* at 262.

Our decision in *Morson* did not delineate the scope of conduct to be considered in scoring offense variables.[28]  It simply held that the sentencing court did not err in scoring OV 9 under the particular facts of that case.  As we explained in *Sargent*, "in a robbery, the defendant may have robbed only one victim, but scoring OV 9 for multiple victims may nevertheless be appropriate if there were other individuals present at the scene of the robbery who were placed in danger of injury or loss of life."[29]  That is precisely what this Court held had happened in *Morson*.

Reading the provisions of MCL 777.1 *et seq.* in harmony suggests that the offense variables are scored by reference only to the sentencing offense, except where specifically provided otherwise.

This does not mean that transactional conduct may never influence a defendant's sentence.  Such a result would frustrate the Legislature's intention of having the guidelines promote uniformity in sentencing.  Nothing precludes the sentencing court from considering transactional conduct when deciding what sentence to impose within the appropriate guidelines range and whether to depart from the guidelines recommendation.  As this Court explained in *People v Babcock*,

---

[28]  *Morson* explicitly avoided this question because there were three competing views advocated by three concurring and dissenting justices.

[29] *Sargent*, 481 Mich at 351 n 2.

in considering whether to depart from the guidelines, the trial court must ascertain whether taking into account an allegedly substantial and compelling reason would contribute to a more proportionate criminal sentence than is available within the guidelines range. In other words, if there are substantial and compelling reasons that lead the trial court to believe that a sentence within the guidelines range is not proportionate to the seriousness of the defendant's conduct and to the seriousness of his criminal history, the trial court should depart from the guidelines. [30]

In addition, of course, the prosecution is always free to charge a defendant with multiple offenses if they exist, rather than a single offense. The defendant then would be sentenced for all offenses for which a conviction was obtained.[31]

---

[30] *People v Babcock*, 469 Mich 247, 264; 666 NW2d 231 (2003). This Court has further recognized that conduct beyond the sentencing offense can be considered for purposes of departing from the guidelines. See, for example, *People v Price*, 477 Mich 1; 723 NW2d 201 (2006). *Price* observed that, although foreign convictions cannot be considered under prior record variable 1, and prior offenses not occurring within five years of the sentencing offense cannot be considered under OV 13, "they can, under appropriate circumstances, give rise to a substantial and compelling reason to justify a departure from the guidelines range . . . ." *Id*. at 5 & n 3 The dissent's "sky is falling" prophecy for the sentencing scheme is unfounded; contrary to the dissent's contention, *post* at 20, our reasoning is, in fact, supported "by the law of this state." Also contrary to the dissent's contention, *post* at 21, we are not suggesting that "sentencing courts should depart freely from the guidelines . . . ." To the contrary, we are suggesting that a subsequent criminal offense may rise to the level of a substantial and compelling reason that justifies a departure from the sentencing guidelines. To the extent that it does, consistently with *Babcock* and *People v Smith*, 482 Mich 292; 754 NW2d 284 (2008), it can certainly be taken into consideration by the sentencing court.

[31] Therefore, with regard to the dissent's hypothetical examples, *post* at 2-3, the prosecution could charge the defendant with the subsequently committed offenses. The defendant could be charged for felonious assault, MCL 750.82, in the first hypothetical and mutilation of a dead body, MCL 750.160, in the second. Alternatively, the sentencing court could consider the subsequently committed offenses and the aggravating circumstances at sentencing. For example, it could consider the defendant's sending the photographs to the victim's family in

Our decision today "not only respects the defendant's right to be sentenced on the basis of law, but it also respects the trial court's interest in having defendant serve the sentence that it truly intends."[32]

THE PROPER SCORING OF OV 9 IN THIS CASE

A defendant is entitled to be sentenced according to accurately scored guidelines and on the basis of accurate information.[33] A sentence is invalid when a sentencing court relies on an inappropriate guidelines range.[34] "[A] sentence that is outside the appropriate guidelines sentence range, for whatever reason, is appealable regardless of whether the issue was raised at sentencing, in a motion for resentencing, or in a motion to remand."[35] However, in this case, the issue was raised in a motion for resentencing.[36]

---

determining what sentence within the guidelines range to impose or whether to depart from the guidelines recommendation.

[32] *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006).

[33] *Id.* at 88-89.

[34] *Id.* at 89.

[35] *People v Kimble*, 470 Mich 305, 310; 684 NW2d 669 (2004).

[36] The dissent contends that the defendant waived any sentencing error. However, this theory was never raised by the prosecution. Failure to brief an issue on appeal constitutes abandonment. *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). "[A] party is bound to the theory on which the cause was prosecuted or defended in the court below." *Gross v Gen Motors Corp*, 448 Mich 147, 162 n 8; 528 NW2d 707 (1995); see also *Dwelley v Tom McDonnell, Inc*, 334 Mich 229, 233; 54 NW2d 217 (1952). Because the prosecution failed to raise the issue of defendant's waiver, we need not consider it. Because we simply do not consider the prosecution's waiver argument, contrary to the dissent's contention, *post* at 4, we do not "creat[e] a new 'revival of waived errors' rule . . . ." That is,

The sentencing court assessed 10 points under OV 9 for defendant's breaking and entering conviction resulting from the January 5, 2003, offense. This means that it determined there were two to nine victims.[37] At the time of

we do not conclude that defendant's filing of a motion for resentencing would "revive" an issue that the defendant had, indeed, already expressly waived. We are also not suggesting that the prosecution's failure to raise an issue constitutes a "confession of substantive error," *post* at 6-7. Thus, we are not by any stretch of the imagination overruling *People v Smith*, 439 Mich 954 (1992), and we are not creating any "automatic rule of reversal," *post* at 7. In addition, contrary to the dissent's assertion, *post* at 4-5, we do not contend that an appellee is required to file a cross-appeal to raise a waiver argument. We simply conclude that an appellee should at some point actually *raise* the waiver argument. And if he or she does not do so, this Court may, although it is not required to, choose not to raise and address the argument on its own. This is hardly a "novel view." See, e.g., *People v Hamacher*, 432 Mich 157, 168; 438 NW2d 43 (1989), which refused to address the prosecution's waiver argument because the "prosecutor did not raise the waiver issue . . . until he filed his brief in this Court," and *People v Oliver*, 417 Mich 366, 386 n 17; 338 NW2d 167 (1983), which refused to address the prosecution's harmless error argument because the prosecution failed to raise this issue below. Indeed, the dissent's view that whether a defendant has waived an issue "must be" considered by an appellate court, even if the prosecution has not raised waiver, is subject to question. Notably, the dissent cites only a short order of this Court in support of this proposition. *Smith*, 439 Mich at 954. But in *Smith*, this Court took issue with the Court of Appeals holding that failure to file a responsive brief "constitutes a confession of error." See *People v Smith*, 190 Mich App 352, 356; 475 NW2d 875 (1991), vacated in part 439 Mich 954 (1992). In the present case, the waiver issue was not only never raised below, it was never raised before us. Finally, to answer the dissent's question, see *post* at 5, defendant had no reason to make the argument that the prosecution failed to raise the waiver issue. The prosecution never raised the waiver issue in the first place; it is only this Court in a dissent that has raised it. Because the prosecution failed to raise the waiver issue, there is no need for us to address whether defendant's counsel was ineffective.

[37] MCL 777.39(1)(c).

13

defendant's offense, OV 9 instructed the court to "[c]ount each person who was placed in danger of injury or loss of life as a victim."[38]

The Court of Appeals concluded that assessing 10 points under OV 9 was proper because of defendant's conduct after the breaking and entering had been completed. Specifically, the Court of Appeals upheld the OV 9 score because "in leaving the scene of the crime, defendant was pursued by a police officer for whom he had failed to stop.[39] He ultimately crashed his car,[40] and he and the two other occupants ran off."[41] The Court decided that defendant's postoffense conduct supported the scoring of OV 9 because "two or more persons were placed in danger of injury *during the criminal transaction.*"[42]

---

[38] MCL 777.39(2)(a). The statute was amended in 2006 to include property loss as well. However, this amendment has no effect on this case.

[39] The record indicated that defendant was not pursued from the scene of the crime. The police officer spotted the getaway vehicle on the road away from the crime site.

[40] From the record, it is unclear if defendant was the driver or merely a passenger.

[41] *McGraw*, unpublished opinion at 2-3; 2006 WL 3334585, at *2.

[42] *Id.* at 3; 2006 WL 3334585, at *2 (emphasis added). The Court of Appeals opinion assumed that defendant was the driver of the vehicle and that an accomplice to a crime is a "victim" under OV 9. It relied on *People v Cook*, 254 Mich App 635; 658 NW2d 184 (2003), and *Chesebro* for the proposition that conduct beyond the sentencing offense can be used to score the offense variables. *Chesebro* involved the judicial sentencing guidelines, not the statutory sentencing guidelines that we interpret today. Furthermore, both of those cases were decided without the benefit of our decisions in *Sargent* and *Morson*. They are overruled insofar as they stand for the proposition that offense variables can be scored using conduct beyond the sentencing offense.

14

We conclude that the Court of Appeals erred by considering the entire criminal transaction and using defendant's conduct after the crime was completed as the basis for scoring OV 9. Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable.[43] OV 9 does not provide for consideration of conduct after

---

[43] MCL 769.31 provides a set of definitions for use "in this section and [MCL 769.34]," which deals with sentencing departures. MCL 769.31(d) provides:

> "Offense characteristics" means the elements of the crime and the aggravating and mitigating factors relating to the offense that the legislature determines are appropriate. For purposes of this subdivision, an offense described in section 33b of the corrections code of 1953, 1953 PA 232, MCL 791.233b, that resulted in a conviction and that arose out of the same transaction as the offense for which the sentencing guidelines are being scored shall be considered as an aggravating factor.

The dissent argues that MCL 769.31(d) permits a sentencing court to consider offenses that are not listed in MCL 791.233b or that did not result in a conviction. This is inconsistent with the well-established legal doctrine *expressio unius est exclusio alterius* ("the expression of one thing is the exclusion of another"). *Miller v Allstate Ins Co*, 481 Mich 601, 611; 751 NW2d 463 (2008).

> Th[is] maxim is a rule of construction that is a product of logic and common sense. *Feld v Robert & Charles Beauty Salon*, 435 Mich 352, 362; 459 NW2d 279 (1990), quoting 2A Sands, Sutherland Statutory Construction (4th ed), § 47.24, at 203. This Court long ago stated that no maxim is more uniformly used to properly construe statutes. [*Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74-75; 711 NW2d 340 (2006).]

Even assuming that MCL 769.31(d) applies to scoring offense variables because it states that offenses listed in MCL 791.233b that resulted in a conviction can be considered, the dissent's argument fails. This is because the natural implication of that assumption is that offenses not listed or that did not result in a conviction cannot be considered. In any event, we need not decide whether a sentencing

15

completion of the sentencing offense. Therefore, it must be scored in this case solely on the basis of defendant's conduct during the breaking and entering. If the prosecution had wanted defendant to be punished for fleeing and eluding, it should not have dismissed the fleeing and eluding charge. It would be fundamentally unfair to allow the prosecution to drop the fleeing and eluding charge while brokering a plea bargain, then resurrect it at sentencing in another form.

When we consider only the breaking and entering, it is apparent that no one was placed in danger of injury or loss of life. No one was present in the general store or anywhere near the defendant when he broke into the building.[44] Even under the current version of OV 9, which allows consideration of property loss, the owner of the general store would be the only victim. Defendant's flight from the police occurred after the offense was completed for purposes of scoring the sentencing guidelines; hence, it cannot be considered in scoring OV 9.[45]

---

court can consider listed offenses resulting in conviction that arose out of the same transaction as the sentencing offense. This is because fleeing and eluding is not a listed offense, and defendant was never convicted of fleeing and eluding. Consequently, contrary to what the dissent asserts, *post* at 18-19, there is no need for us to decide whether defendant's fleeing and eluding constituted an "aggravating . . . factor[] relating to the offense" under MCL 769.31(d).

[44] Cf. *Morson*, 471 Mich at 262-263, which held that there were two "victims" under OV 9 when two people were present at the scene of the sentencing offense and were placed in danger.

[45] There is no need for us to determine precisely when the breaking and entering offense was completed for purposes of scoring the sentencing guidelines in this case; it is clear that defendant's flight from the police and the subsequent events involved here were far beyond and removed from the sentencing offense.

16

Defendant did not place two to nine victims in danger of injury or loss of life. Therefore, no points should have been assessed for OV 9.[46]

CONCLUSION

Offense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise. The language of the statute for OV 9 does not so provide.

In this case, the sentencing court scored OV 9 by including defendant's conduct in fleeing from the police after his offense of breaking into and entering an unoccupied building was completed. His flight from the police should not have been used in scoring OV 9. The sentencing court should have assessed zero points for OV 9 because no one was placed in danger during the breaking and entering.

Accordingly, we reverse the judgment of the Court of Appeals and remand the case to the circuit court for resentencing.

Marilyn Kelly
Michael F. Cavanagh
Stephen J. Markman
Diane M. Hathaway

---

[46] Defendant also argues that OV 9 was improperly scored at 10 points because (1) accomplices to the sentencing crime are not "victims" for purposes of scoring OV 9 and (2) there was insufficient evidence that he was the driver of the vehicle that fled the police and crashed into the chain-link fence. We need not address these issues because they pertain to conduct committed after the breaking and entering was completed and for which defendant cannot have points assessed under OV 9.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                           No. 132876

MATTHEW LLOYD McGRAW,

      Defendant-Appellant.

_____

CORRIGAN, J. (*dissenting*).

The majority holds that the sentencing court erred by scoring 10 points for offense variable (OV) 9 (number of victims), MCL 777.39, because the collision of defendant's getaway vehicle into a fence during a police chase occurred after the definitional elements of his offense, breaking and entering a building with intent to commit larceny, MCL 750.110, were completed. The majority thus reverses the judgment of the Court of Appeals and remands the case for resentencing.

I respectfully dissent for three reasons:

(1) Defendant waived his challenge to the scoring of OV 9 when his attorney stated at sentencing that the guidelines minimum sentence ranges for his offenses "appear to be correct."

(2) Defense counsel was not ineffective in agreeing with the guidelines calculations because the caselaw in effect at the time of sentencing supported the OV 9 score.

(3) In any event, the sentencing court did not err in scoring OV 9. The record supported the court's finding that two persons were placed in danger of injury when defendant's getaway vehicle crashed into a fence. In prohibiting consideration of defendant's escape attempt, the majority invents a new "elements-only" test for scoring the offense variables. This new rule artificially confines the duration of an offense to its definitional elements for the purpose of sentencing. This unprecedented approach to scoring the sentencing guidelines disregards the well-established res gestae principle that looks to the entire transaction or uninterrupted chain of events surrounding the commission of an offense.

The practical consequences of this new rule should not be underestimated. The majority today severely impairs the ability of sentencing courts to assess the seriousness of an offense when scoring the offense variables. No longer will a court ever be able to consider aggravating facts and circumstances that occur after the elements of the offense have been met.

Consider, for example, a defendant who breaks into a woman's home, rapes her, and then, immediately after the rape, severely beats her and threatens her with a knife he found in her home. The defendant is convicted of first-degree criminal sexual conduct. Under today's decision, the defendant cannot be assessed any

2

points under OV 1, MCL 777.31, for his use of the knife, under OV 3, MCL 777.33, for the injuries that the victim suffered during the beating, or under OV 7, MCL 777.37, for the aggravated physical abuse of the victim because all these actions, while part of the same criminal event as the rape, occurred after the rape was completed.

Or to take another example, suppose a defendant kills a young woman, dismembers her body, and then, three days later, sends photographs of the dismembered body parts to the victim's parents, which requires them to undergo psychological counseling as a result of seeing the photographs. The defendant is convicted of first-degree murder. Under the majority's new elements-only rule, the court cannot assess any points under OV 5, MCL 777.35, for the parents' serious psychological injuries because the elements of first-degree murder were completed before the defendant dismembered the body and sent the photographs to the parents. The majority's new rule will thus prevent courts from assessing the true seriousness of an offense when scoring the guidelines to determine the appropriate minimum sentence.

## I. Waiver

Waiver is the intentional relinquishment or abandonment of a known right. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). It differs from forfeiture, which is the failure to timely assert a right. *Id*. A waiver extinguishes the alleged error, thus foreclosing appellate review. *Id*. at 215, 219. In *Carter*, we held that no reviewable error existed because defense counsel had "clearly

3

expressed satisfaction with the trial court's decision to refuse the jury's request [to rehear testimony] and its subsequent instruction." *Id*. at 219.

Here, the court asked defense counsel at sentencing if he had received the sentencing information report indicating a guidelines minimum sentence range of 29 to 114 months. Defense counsel responded, "Yes, Judge, and they appear to be correct." Defendant did not take issue with counsel's statement. Thus, the record reflects that the defense expressed satisfaction with the guidelines range, the calculation of which included the scoring of OV 9 that defendant now challenges on appeal. Because the issue has been waived, the alleged error is extinguished, foreclosing appellate review. *Id.* at 215, 219.

The majority's reliance on defendant's motion for resentencing as a basis to review the alleged error reflects a misunderstanding of the distinction between waiver and forfeiture. Although a motion for resentencing may preserve a claim and thus avoid forfeiture, defendant here had already waived the alleged error at sentencing, thus extinguishing it *before the motion for resentencing was filed*. We have never held that an extinguished error could be revived in the manner suggested by the majority; indeed, creating a new "revival of waived errors" rule would significantly erode the distinction between waiver and forfeiture explained in *Carter*.

The majority also errs by stating that "[b]ecause the prosecution failed to raise the issue of defendant's waiver, we need not consider it." *Ante* at 12 n 36. An appellee is not required to file a cross-appeal raising the issue of forfeiture or

4

waiver. On the contrary, an appellant's argument on each issue must include a statement of the applicable standard or standards of review. MCR 7.212(C)(7); MCR 7.306(A). A defendant's waiver or forfeiture of an issue will affect the availability of or the standard of review for that issue. Thus, preservation, including forfeiture and waiver, is a threshold question that inheres in every issue raised on appeal and must be considered by an appellate court. The majority's novel view that an appellee must file a cross-appeal to challenge the preservation of an issue thus lacks any basis in our court rules or caselaw, and it would increase dramatically the number of criminal appeals filed in our court system.

Moreover, if, under today's decision, an appellee is now required to raise the argument that the appellant waived a substantive issue, then is the appellant required to raise the argument that the appellee waived the waiver issue? The majority's decision essentially creates a potentially infinite spiral of waivers with no logical stopping point. What principle guides the majority in choosing to end this spiral at the point where the appellee but not the appellant is responsible for raising the issue? It is, after all, by definition the appellant who generally advances issues on appeal. The majority's arbitrary and unexplained assignment of responsibility to the appellee distorts the usual appellate burden and is most troubling.

Nor is it clear how the majority can avoid addressing whether the substantive issue was waived if, as we held in *Carter*, a waived error is extinguished. The truly illogical nature of the majority's action should not go

5

unmentioned: the majority reverses the judgment of sentence on the basis of an "error" while refusing even to consider whether that "error" was extinguished. How can the majority reverse because of an error while dodging the question whether that very error even *exists*?

Further, the majority cites *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959), for the proposition that the "[f]ailure to brief an issue on appeal constitutes abandonment." *Ante* at 12 n 36. But in *Mitcham*, this Court was referring to an *appellant's* failure to brief an issue in a civil case, not to an appellee's failure to discuss an issue in response.[1]

Indeed, this Court expressly declined to apply the *Mitcham* abandonment rule to an appellee in a criminal case. In *People v Smith*, 439 Mich 954 (1992), this Court vacated the portion of a Court of Appeals judgment that reversed a defendant's convictions on the ground that the prosecution had confessed error by failing to file a brief. This Court explained:

> A party who seeks to raise an issue on appeal but who fails to brief it may properly be considered to have abandoned the issue. *Mitcham v Detroit*, 355 Mich 182, 203 (1959). However, *the failure of an appellee to file a responsive brief may not properly be considered to be a confession of substantive error.* [*Id.* (emphasis added).]

---

[1] Similarly, the majority's citation of *Gross v Gen Motors Corp*, 448 Mich 147, 162 n 8; 528 NW2d 707 (1995), and *Dwelley v Tom McDonnell, Inc*, 334 Mich 229, 233; 54 NW2d 217 (1952), for the proposition that "a party is bound to the theory on which the cause was prosecuted or defended in the court below" is erroneous because neither *Gross* nor *Dwelley* suggested that an appellee's failure to address an issue correctly in a responsive brief precludes an appellate court from addressing the issue.

6

If, as this Court held in *Smith*, an appellee's failure to file a brief altogether does not constitute a confession of error, then it follows that an appellee's filing of a brief that does not address a particular issue also is not a confession of error. The majority essentially overrules *Smith* by indirection without acknowledging that it is doing so.

The majority's new "appellee waiver" rule not only distorts our caselaw, but may also have very serious real-world consequences for our state's criminal justice system in these difficult economic times. Apparently because of budget constraints, the prosecution does not file appellee briefs in 19 percent of the criminal appeals in the Court of Appeals. Yet the majority now punishes the people of this state for failing to file a brief by creating what amounts to an automatic rule of reversal in one-fifth of the criminal appeals in our state.

Indeed, the dissenting judge in the Court of Appeals in *Smith* noted this very concern by explaining that reversing a conviction on the ground that the prosecution had not filed a brief "would result in the unnecessary reversal of validly obtained convictions" and "would constitute an even greater waste of this state's already taxed law enforcement, prosecutorial, and judicial resources than that occasioned by this Court's review of both sides of an issue on appeal." *People v Smith*, 190 Mich App 352, 359; 475 NW2d 857 (1991) (Danhof, C.J., dissenting).

An appellate court is obligated to articulate and apply the governing legal principles correctly regardless of whether the parties or lower courts have done so.

7

That is why an appellate court will affirm a lower court's judgment if it reached the correct result albeit for the wrong reason. See, e.g., *American Alternative Ins Co, Inc v York*, 470 Mich 28, 33; 679 NW2d 306 (2004) ("The trial court and the Court of Appeals applied the wrong legal standards. However, because the Court of Appeals reached the correct result, we affirm the Court of Appeals decision for the reasons stated herein.").

The majority's decision subverts this fundamental duty by declining to apply the waiver principles explicated in *Carter.* We should not pretend that no waiver occurred merely because the prosecution's responsive brief did not correctly articulate the appropriate manner to resolve the issues raised on appeal.

## II. Ineffective assistance of counsel

Defendant argues that his trial counsel rendered ineffective assistance, but the majority does not analyze this issue under the two-part test for ineffective assistance of counsel set forth in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To satisfy the *Strickland* standard, a defendant bears a heavy burden to show that counsel made errors so serious that he was not performing as the counsel guaranteed by the Sixth Amendment, and the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Moreover, the defendant must establish prejudice, i.e., a reasonable probability that but for counsel's error, the result of the proceeding would have been different. See *People v Dendel*, 481 Mich 114, 124-125; 748 NW2d 859 (2008); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994).

8

The majority does not explain whether, and if so, why, it believes defendant has met the heavy burden required to establish ineffective assistance of counsel. In any event, counsel's acquiescence in the scoring of OV 9 was not an error at all, let alone an error so serious as to deprive defendant of the counsel guaranteed by the Sixth Amendment. At the time of sentencing, the existing caselaw provided that a defendant's conduct during the continuum of events surrounding the offense could be considered in scoring the offense variables. See *People v Cook*, 254 Mich App 635, 641; 658 NW2d 184 (2003) ("[W]here the Legislature has not precluded it, we find that where the crimes involved constitute one continuum of conduct, as here, it is logical and reasonable to consider the entirety of defendant's conduct in calculating the sentencing guideline range with respect to each offense."); *People v Chesebro*, 206 Mich App 468, 471; 522 NW2d 677 (1994) (stating that when scoring OV 6 of the former judicial guidelines, which corresponded with current OV 9, victims involved in the transaction giving rise to the conviction may be considered).

At the time of sentencing, counsel could not have known that the then-controlling caselaw would be swept aside by the majority's new rule confining the scoring of offense variables to the definitional elements of the sentencing offense. The failure to anticipate a change in the law generally does not constitute ineffective assistance of counsel. *Mullican v United States*, 469 F Supp 2d 498, 504 (ED Tenn, 2007), citing *Brunson v Higgins*, 708 F2d 1353, 1356 (CA 8, 1983); see also *Lucas v O'Dea*, 179 F3d 412, 420 (CA 6, 1999) ("Only in a rare

9

case will a court find ineffective assistance of counsel based upon a trial attorney's failure to make an objection that would have been overruled under the then-prevailing law.") (quotation marks omitted); *Kornahrens v Evatt*, 66 F3d 1350, 1360 (CA 4, 1995) ("Based on this clear precedent, we cannot say that, under the facts of this case, [counsel's] trial performance was constitutionally deficient because he followed a long-standing and well-settled rule of South Carolina criminal law—*even when that rule was under attack in the United States Supreme Court at the time of trial*.") (emphasis added).

Thus, counsel's acquiescence in the scoring of OV 9 does not satisfy the deficient performance prong of *Strickland*. The failure to anticipate that this Court would one day invent an elements-only test for scoring offense variables in contravention of caselaw in effect at the time of sentencing does not constitute ineffective assistance of counsel.

III. When is the sentencing offense completed?

The majority's central holding is that a defendant's conduct occurring after an offense is completed may not be considered in scoring the offense variables unless the statutory provision for a particular variable instructs otherwise. The central flaw in the majority's analysis is that it completely begs the question of *when* an offense is completed. Indeed, the majority expressly avoids this question in this case, providing only an amorphous analysis regarding whether the challenged conduct was "far beyond and removed" from the underlying offense. *Ante* at 16 n 45. Rather than permitting sentencing courts to analyze the res gestae

10

of a sentencing offense as we do in other contexts, the majority artificially limits

consideration of the offense to its definitional elements. Not once does the

majority even attempt to explain why or on what authority it has imposed this

limitation.

The majority's new elements-only rule has no basis in Michigan caselaw.

In *Chesebro*, the Court of Appeals held that only victims involved in the

transaction underling the sentencing offense could be considered in scoring OV 6

of the former judicial guidelines:

> We think the rule that more accurately applies the sentencing guidelines is that the offense variables are to be scored *only with respect to the specific criminal transaction that gives rise to the conviction for which the defendant is being sentenced unless the instructions for a variable specifically and explicitly direct the trial court to do otherwise*. [*Chesebro*, *supra* at 471 (emphasis added).]

We analyzed scoring decisions under OV 9 of the current legislative

sentencing guidelines in *People v Morson*, 471 Mich 248; 685 NW2d 203 (2004),

and *People v Sargent*, 481 Mich 346; 750 NW2d 161 (2008). In *Morson*, the

defendant's accomplice committed an armed robbery against Deborah Sevakis. A

bystander, James Bish, was shot while chasing the accomplice *after the elements*

*of armed robbery were completed*. This Court held:

> Defendant was assessed ten points by the sentencing court for two victims: Deborah Sevakis and James Bish. The Court of Appeals reversed that determination by the sentencing court, concluding that Sevakis was the only victim of the armed robbery. We disagree with the Court of Appeals and therefore reverse its conclusion regarding OV 9.

> Pursuant to the plain language of the statute, the sentencing court is to count "each person who was placed in danger of injury or

11

loss of life" as a victim. Though Sevakis was the only person actually robbed, Bish, who was standing nearby and responded to Sevakis's call for help, was also "placed in danger of injury or loss of life" by the armed robbery of Sevakis. Consequently, the sentencing court properly counted Bish as a victim and properly scored defendant under OV 9. [*Morson*, *supra* at 261-262.]

Although Justice Young dissented on other issues in *Morson*, he agreed with the majority's analysis of OV 9:

> I agree with the majority that the trial court did not err when it assessed ten points for offense variable (OV) 9. The language of MCL 777.39(2)(a) clearly states that *each* person "placed in danger of injury or loss of life" is to be counted as a victim. *Because a gun was fired at him*, James Bish was placed in danger even if he had not intervened or been injured. [*Id*. at 277 (Young, J., concurring in part and dissenting in part) (second emphasis added).]

Thus, *all* persons placed in danger during the course of a crime are properly counted as victims for the purposes of OV 9.

Nothing in *Morson* suggests that only the definitional elements may be used in scoring the offense variables. On the contrary, conduct that occurred *after* the elements were satisfied supported the OV 9 scoring decision. Thus, *Morson* supports the conclusion that every person placed in danger *during the criminal event* may count as a victim under OV 9.[2]

In *Sargent*, a criminal sexual conduct case, the sentencing court assessed 10 points for OV 9 on the basis that there were two victims: the complainant and her sister, whom the defendant had sexually abused previously. In a unanimous

---

[2] Then-Justice Kelly and Justice Cavanagh were in the majority in *Morson*, yet they make no attempt to explain their sudden change of opinion here.

12

decision, this Court remanded for resentencing because the abuse of the complainant's sister was not part of the sentencing offense transaction and only conduct relating to the offense could be considered when scoring the offense variables.

We explained in *Sargent* that the offense variables are generally offense specific because their primary focus is the nature of the offense. We quoted several provisions that focused on "the offense" for purposes of scoring the guidelines. *Sargent*, *supra* at 348. We also noted that MCL 769.31(d) defines "offense characteristics" as "the elements of the crime and the aggravating and mitigating factors relating to the offense that the legislature determines are appropriate." *Id*. Thus, we held, only conduct "relating to the offense" may be considered when scoring the offense variables. *Id*. at 349. This conclusion was reinforced by the fact that the statutes for some offense variables specifically provide for considering factors unrelated to the offense being scored. *Id*. at 349-350. We thus concluded that "only conduct that relates to the offense being scored may be considered." *Id.* at 350.

We then stated that "when scoring OV 9, only people placed in danger of injury or loss of life when the sentencing offense was committed (or, at the most, during the same criminal transaction) should be considered." *Id.* Noting that the jury did not convict the defendant of abusing the complainant's sister and that the abuse of the sister did arise out of the same transaction as the abuse of the

13

complainant, we concluded that zero points should have been assessed for OV 9. *Id*. at 351.

And as discussed, Court of Appeals caselaw applying the legislative guidelines also suggests that the entire criminal transaction may be considered in scoring the offense variables. In *Cook*, the defendant challenged the use of his conduct in fleeing the police to assess 10 points for OV 19 (interference with the administration of justice) when calculating his minimum sentence for assault with intent to do great bodily harm less than murder. The defendant argued that his flight from the police did not occur during the assault. The Court of Appeals found no basis for the defendant's argument in the plain language of the statute.

> In drafting the sentencing guidelines scoring instructions, the Legislature could have expressly prohibited sentencing courts from considering facts pertinent to the calculation of the sentencing guidelines range for one offense from being also used to calculate the sentence guidelines range for another offense, but it did not do so. Moreover, where the Legislature has not precluded it, we find that *where the crimes involved constitute one continuum of conduct, as here, it is logical and reasonable to consider the entirety of defendant's conduct in calculating the sentencing guideline range with respect to each offense*. Thus, the trial court did not err in scoring ten points under OV 19 for defendant's assault conviction. [*Cook*, *supra* at 641 (emphasis added).]

See also *People v Gullet*, 277 Mich App 214, 218; 744 NW2d 200 (2007) (holding that the sentencing court had improperly "looked beyond the criminal transaction that supported the conviction when it scored 10 points for OV 9").

In short, all these cases support the conclusion that a court may consider the criminal transaction when scoring the offense variables. Until today's decision, a

sentencing court was never required to confine its analysis only to the definitional elements of the sentencing offense.

More broadly, the res gestae concept is deeply embedded in our caselaw. For example, in *People v Gillis*, 474 Mich 105, 109; 712 NW2d 419 (2006), we held that in felony murder, a defendant's "perpetration" of the predicate felony includes acts that occur outside the definitional elements but during "the unbroken chain of events surrounding that felony." "Because defendant at the time of the collision was attempting to escape detection after having been identified during the home invasion, a reasonable juror could conclude that he was still 'in the perpetration of' the home invasion." *Id.*

Although the analysis in *Gillis* hinged in part on the definition of "perpetration" in the first-degree murder statute, a term that is not used in the offense variable provisions, it is nonetheless useful in demonstrating that an offense may remain ongoing after the completion of the definitional elements. We noted in *Gillis* that the "commission of the felony itself does not render the defendant's criminal plan complete. When a defendant plans to commit a felonious act, it is 'a legitimate assumption that . . . [the defendant] also planned to escape from the scene of his crime.'" *Id.* at 115-116 (citation omitted). We noted that "escape is 'as important to the execution of the [felony]' as the elements of the crime itself." *Id.* at 116 (citation omitted).

> In other words, a felon has not "carried out" or "completed" the felony for felony-murder purposes until the felon has escaped. A murder committed during the attempt to escape is committed "in the perpetration of" that felony, because the felonious transaction has

15

not yet been completed. Accordingly, "perpetration" includes not only the definitional elements of the predicate felony, but also includes *those acts that are required to complete the felony—such as those that occur after the commission of the predicate felony while the felon is attempting to escape . . . .*

\* \* \*

"A burglar may be said to be engaged in the commission of the crime of burglary while making away with the plunder, and while engaged in securing it. So, a robbery within the meaning of a rule that a homicide committed in the perpetration of a robbery is murder in the first degree is not necessarily concluded by the removal of the goods from the presence of the owner; and it is not necessary that the homicide should be committed at the precise time and place of the robbery. *As in the case of burglary, the robber may be said to be engaged in the commission of the crime while he is endeavoring to escape and make away with the goods taken.*" [*Id*. at 116-117, 120, quoting Wharton, Law of Homicide (3d ed), § 126, p 186) (emphasis added).]

In short, under the res gestae rule, a murder that occurs during the "unbroken chain of events surrounding the predicate felony" is committed in the perpetration of that felony. *Gillis*, *supra* at 121. Time, place, causation, and continuity of action determine whether the murder occurred in perpetration of the predicate felony. *Id*. at 127.

Moreover, this Court's use of the res gestae principle is not limited to the felony murder context. It is firmly rooted in our caselaw and used to describe not only the elements of the offense, but also the body of facts necessary to prove and support those elements. See, e.g., *People v Kayne*, 268 Mich 186; 255 NW 758 (1934); *People v Sholl*, 453 Mich 730; 556 NW2d 851 (1996). A leading treatise concisely explains the res gestae principle:

16

The res gestae includes circumstances, facts and declarations which grow out of the main fact, contemporaneous with it, and serve to illustrate its character. Normally facts and circumstances surrounding the commission of a crime are properly admissible as part of res gestae; however, use of testimony by the prosecutor to create prejudicial inferences unsupported by evidence is improper.

No inflexible rule has ever been, and probably one can never be adopted as to what is a part of the res gestae. It must be determined largely in each case by the peculiar facts and circumstances of the case, but it may be stated as a fixed rule that included in the res gestae are the facts which so illustrate and characterize the principal fact as to constitute the whole of one transaction. So long as a transaction continues, so long do acts and deeds emanating from it became [sic] a part of it, they may be described in a court of justice. There is no limit of time within which the res gestae can be arbitrarily confined. [1A Gillespie, Michigan Criminal Law and Procedure, § 18:72, pp 445-446.]

In light of our well-established caselaw addressing res gestae, I cannot discern why this Court should now invent a wholly different rule for determining when an offense is complete for purposes of applying the offense variables. Even accepting, as we stated in *Sargent*, that the offense variables are offense specific and that the focus must be on the nature of the sentencing offense, the majority fails to explain why only the definitional elements may be considered. If, as we stated in the felony murder context, a felony is ongoing and not yet complete while the felonious transaction continues, then why cannot a sentencing court consider the full continuum of a defendant's conduct during that transaction for the purpose of scoring the offense variables? Further, in relation to any offense, the court will have already heard the entire res gestae of the crime during the trial or other proceedings and should be allowed to consider those aggravating and

17

mitigating factors affecting the seriousness of the offense when relevant to scoring particular variables.

The elements are traditionally used to determine whether the prosecution has presented sufficient evidence to support a charge or a conviction, not to define the res gestae of the offense. Indeed, the majority's new rule collapses the duration of a criminal offense so that it begins and ends at precisely the same instant. A prosecutor cannot charge a crime until the last element has been completed. At the most, a prosecutor could charge only for an attempt if all the elements have not been completed. Yet under the majority's opinion, the crime also *stops* immediately upon the completion of the elements. That is, at the precise moment the crime can be charged, the majority would stop the clock for the purpose of scoring the sentencing guidelines. Why?

As we explained in *Sargent*, MCL 769.31(d) defines "offense characteristics" as "the elements of the crime *and* the aggravating and mitigating factors *relating to the offense* that the legislature determines are appropriate." (Emphasis added.) In contravention of the statute and our analysis in *Sargent*, the majority now limits consideration to the elements and requires courts to ignore any other facts and circumstances "relating to the offense" that occur during the res gestae of the crime.

Not once does the majority even attempt to explain why or how it has reached the remarkable conclusion that a defendant's flight from the scene of the crime is not an "aggravating . . . factor[] relating to the offense . . . ." Instead, the

18

majority simply gives no effect to the portion of the statute that does not support its new standard, focusing only on the reference to "the elements of the crime" while disregarding the phrase "and the aggravating and mitigating factors relating to the offense that the legislature determines are appropriate." MCL 769.31(d).

The majority's suggestion that it can ignore defendant's escape attempt because defendant was not convicted of fleeing and eluding reflects a mistaken understanding of MCL 769.31(d). Again, that statute defines "offense characteristics" as

> the elements of the crime and the aggravating and mitigating factors relating to the offense that the legislature determines are appropriate. For purposes of this subdivision, an offense described in . . . MCL 791.233b, that resulted in a conviction and that arose out of the same transaction as the offense for which the sentencing guidelines are being scored shall be considered as an aggravating factor.

This provision requires that certain offenses that result in a conviction must be considered as aggravating factors. But contrary to the majority's suggestion, it does not say that other contemporaneous offenses that do not result in a conviction or that are not listed in MCL 791.233b cannot be considered as aggravating factors.

Next, it is true, as we stated in *Sargent*, that some of the offense variable provisions expressly require consideration of facts that are not offense specific. But most of the examples cited contemplate consideration of events falling not only outside the definitional elements of the sentencing offense, but outside the criminal transaction itself. Thus, the statutory provisions for those offense variables would not be nullified by considering the criminal transaction in scoring

19

all offense variables. And although OV 14 (leader in a multiple offender situation) does expressly refer to the "entire criminal transaction," MCL 777.44(2)(a), this language merely emphasizes the broader focus when the defendant is a leader of other offenders. In other words, the reference to the "entire criminal transaction" in this provision merely reflects that OV 14 uniquely pertains to multiple offender situations.

Moreover, the majority's elements-only test violates the very purpose of the sentencing guidelines: to promote uniformity and consistency in sentencing.[3] To that end, we have held that departure from the guidelines recommended minimum sentence range is meant to be the exception, not the rule.[4] Despite this well-established standard and without acknowledging the inconsistency created, the majority states that the trial court may consider factors within the criminal transaction but outside the elements when departing from the guidelines range. This reasoning is simply unsupported by the law of this state.

---

[3] See *People v Smith*, 482 Mich 292, 311-312 & n 46; 754 NW2d 284 (2008); former MCL 769.33(1)(e)(*iv*), as added by 1994 PA 45 (providing that one of the Sentencing Commission's tasks was to develop sentencing guidelines that "[r]educe sentencing disparities based on factors other than offense characteristics and offender characteristics and ensure that offenders with similar offense and offender characteristics receive substantially similar sentences"); *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003) ("The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment.").

[4] *Smith*, *supra* at 299, citing *Babcock*, *supra* at 257-258, citing *People v Fields*, 448 Mich 58, 62, 67-68; 528 NW2d 176 (1995).

Indeed, those justices in the majority in this case who were also in the majority in *People v Smith*, 482 Mich 292; 754 NW2d 284 (2008), have failed to explain their inconsistent positions. Contrary to the analysis in *Smith*, the majority today suggests that sentencing courts should depart freely from the guidelines recommended range by considering factors outside the elements of the offense that may not be considered when scoring the offense variables. This invitation to depart more readily from the guidelines will likely cause a dramatic increase in the number of sentencing appeals, which our appellate courts will have to review under the rigid framework demanded by *Smith*.

In this case, I would hold that defendant was properly assessed 10 points for OV 9. Defendant argues that even if his escape attempt were to be considered, his accomplices could not be considered victims for the purpose of scoring OV 9. But the version of MCL 777.39(2)(a) applicable in this case stated: "Count *each person* who was placed in danger of injury or loss of life as a victim." (Emphasis added.) Defendant's accomplices occupied the car that crashed into a fence during a police chase, obviously putting them in danger of physical injury. "Each person" is not a difficult phrase to understand, and it does not exclude accomplices. A person's guilt or innocence does not affect whether that person was placed in danger.

Defendant further contends that no evidence existed that he was driving the getaway vehicle when it crashed into the fence. The police officer, however, saw a person with light hair inside the fleeing vehicle, and defendant had red hair,

21

which could be viewed as light.[5]  In any event, defendant at the very least aided and abetted the escape attempt, and he cannot now avoid responsibility for participating in the flight from the police that led to the crash into a fence.

## IV. Conclusion

Accordingly, I would affirm the judgment of the Court of Appeals. Defendant waived his claim that OV 9 was incorrectly scored when his attorney conceded at sentencing that the guidelines minimum sentence ranges for his offenses "appear to be correct."  Counsel was not ineffective in making this concession, given that the caselaw in effect at the time of sentencing supported the OV 9 score.  Finally, the majority's new elements-only rule for scoring offense variables has no basis in our caselaw.  The Court of Appeals properly considered the entire res gestae of the sentencing offense in concluding that the evidence supported the scoring decision.

Maura D. Corrigan
Elizabeth A. Weaver
Robert P. Young, Jr.

---

[5] The presentence investigation report states that the officer "could observe a male subject with light hair, who then put a black hood over his head. *There were no other occupants visible in the car*."  (Emphasis added.)  Contrary to the implication of the majority, it is a reasonable inference that the only person the officer saw in the vehicle was the driver of that vehicle.